NUMBER
13-09-00462-CV

 

                                        COURT OF APPEALS

 

                     THIRTEENTH
DISTRICT OF TEXAS

 

                         CORPUS
CHRISTI - EDINBURG

                                                                      

 

J.C. PENNEY CORPORATION,
INC.,

D/B/A J.C. PENNEY STYLING
SALON,                                      Appellant,

 

v.

 

YOLANDA GONZALEZ-ALANIZ,                                                 
Appellee.

                                                                      

 

On appeal from the County Court at Law No. 2 

of Cameron County, Texas.

                                                                  

 

MEMORANDUM OPINION

 

 Before
Chief Justice Valdez and Justices Benavides and Vela

                      Memorandum
Opinion by Justice Benavides

 

            By two issues, appellant J.C. Penney Corporation,
Inc., d/b/a J.C. Penney Styling Salon (“J.C. Penney”) contends that:  (1) the
trial court abused its discretion when it denied J.C. Penney’s motion to
exclude the testimony of appellee’s expert witness, Nancy Heupel King; and (2)
there was insufficient evidence at trial to support findings of negligence and
damages against J.C. Penney.  We affirm. 

I. Background

            On
May 6, 2005, appellee, Yolanda Gonzalez-Alaniz, traveled with her mother and
children to the J.C. Penney Styling Salon in Harlingen, Texas, for a hair
appointment.  Yolanda had been a regular customer of hairstylist Cyndia Robles
Ybanez, who had worked at this salon since 2003.  At this appointment, Yolanda
planned to have the roots of her hair lightened and her hair styled.   

A.        Yolanda’s Testimony

            At trial, Yolanda testified that she had to wait
for her appointment to begin because her stylist, Cyndia, was running late. 
When Cyndia finally arrived, she escorted Yolanda to her station and proceeded
to the back of the salon to pour and mix the hair solution to lighten Yolanda’s
roots.  Yolanda testified that she had a history of sensitive scalp issues and
that Cyndia knew, or should have known, about her hair condition given their
mutual history.  

            Yolanda testified that she immediately started
to feel a burning sensation when Cyndia applied the hair solution to her scalp. 
According to Yolanda, when she informed Cyndia about the burning, Cyndia
replied, “ah, don’t worry, girl, it’ll go away.”  When Yolanda complained
again, another J.C. Penney salon employee, Andy Gonzalez, told Yolanda that her
scalp would “numb up” in five minutes.  Yolanda reported that her eyes were
watering and the inside of her nose started to burn.  She continued to complain
about a burning sensation and Cyndia handed her a magazine to get her “mind off
of it.”  

            According to Yolanda, at this point Andy asked
Cyndia if she had reviewed Yolanda’s “traveler” sheet before mixing the hair
solution.  J.C. Penney Styling Salon manager Celeste Ybanez established that a
traveler sheet is a form generated by J.C. Penney that tracks a customer’s
salon history.  It reports “the customer’s name, the date they went by, what
service they were getting done[,] and it’s separated by certain sections, [such
as] lab history [and] comments.”  All chemicals used during a session must be
reported on the traveler sheet.  Celeste explained that a stylist will write
down what service they provided to the customer, what product they used, and
how long they processed the customer’s hair.  The next day, a receptionist
inputs the information into J.C. Penney’s computer system.  

            Yolanda testified that Cyndia did not look at
her traveler sheet before mixing her hair solution.  Yolanda insisted that
Cyndia rinse the solution from her scalp immediately.  Cyndia took Yolanda to
the sink but then allegedly applied more solution.  At this point, Yolanda
testified that she “took [Cyndia’s] hands off and . . . said [‘]no, get it off
‘cause it’s really burning.[’]  I was in a lot of pain and my head was hurting
me and pounding.”  Yolanda testified that Andy then approached with her traveler
sheet and asked, “Did you put BioSilk on her?,” to which Cyndia replied, “I
didn’t.”  As Cyndia washed the solution off her head, Yolanda recalled that she
said, “[O]h, girl, I think I’m going to have to take you to the hospital,” and
“[d]on’t worry, girl, I’ll make it up to you.”  Yolanda testified that she paid
for her service but did not file an incident report because she was emotionally
upset and just wanted to leave the salon.  She also claimed that she did not
want to get Cyndia into trouble.  She remembered Andy saying, “make her sign a
waiver” as she walked out of the salon.    

            In her lawsuit, Yolanda claimed that she
suffered from blistering on her scalp, migraines, loss of appetite, and that
her hair fell out where the solution had been applied.  She did not seek
medical treatment for two weeks because she “thought [her symptoms were] going
to go away,” and treated her blisters at home with Neosporin and took Tylenol
for pain.  She eventually visited Alison Garza, M.D., a primary care physician. 
Dr. Garza treated Yolanda for “small vesicular lesions” due to “an allergic
reaction of the scalp secondary to hair coloring received on May 6, 2005.”  Dr.
Garza’s records indicated that she also noted that Yolanda’s nostrils were
“fiery red.”  Dr. Garza prescribed Rogaine for the hair loss.  Two days later,
when Yolanda called Dr. Garza complaining of continued headaches, Dr. Garza
told her to go to the hospital.  The E.R. doctor, according to hospital
records, diagnosed Yolanda with chronic cephalgia and basogangleus lesions on
her scalp.  Yolanda subsequently visited a neurologist, Miguel A. Gutierrez,
M.D., who diagnosed her with migraines.  Dr. Gutierrez treated Yolanda’s
migraines with Topamax.  Dr. Gutierrez later referred her to Stanley Fisher,
M.D., a neurologist in Houston.  Dr. Fisher opined that Yolanda suffered from
generalized anxiety disorder.

 

B.        Nancy Heupel King’s Testimony

            King testified as Yolanda’s expert
witness.  During trial, King stated that she regularly employed hairstylists,
manicurists, and aestheticians as a salon owner in the state of Maryland for
ten years.  While a salon owner, she became involved with the Board of
Cosmetologists in Maryland and was eventually appointed Chairman of the Board. 
King further testified that she has written laws and rules regarding
cosmetology for all fifty states and has helped prepare some of the national
exams that states offer for persons seeking cosmetology licenses.  She was a
cosmetology exam development and subject-matter expert for the Texas Department
of Licensing and Regulations from 1998 until 2006.  King is also a contributing
author and editor of the Milady Standard for Cosmetology, which the most
commonly-used textbook in cosmetology courses.  She is not, however, a licensed
cosmetologist in any state.  She has licenses in Colorado, Arizona, and
Maryland as a nail technician or manicurist.  

            King testified that salon owners are responsible
for ensuring that their employees have valid licenses and that they work within
the standards of practice for the scope of that license.  She also stated that
it is important for licensed cosmetologists to receive regular training and
evaluations.  She testified that “cosmetologists should know what harmful
ingredients are in the products” they use, explaining that “that doesn’t mean
that they’re expected to be a chemist, but they need to know which chemicals in
what products need to be used . . . so that they are in fact safe.”  King also
testified that it is crucial that employees know what material safety data
sheets, or MSDS sheets, are.  According to King, cosmetologists working with
chemicals “should have read the MSDS sheet for the product and they should be
familiar with the safe use and handling and the potential hazards from that product’s
use or misuse.”  Cosmetologists should also know the difference between
disinfection and sanitation.  Sanitation, she explained, referred to cleaning
the surface debris of cosmetology tools.  Disinfection, on the other hand,
dealt with the removal of bacteria and germs on tools.  

King opined that salon employers
should ensure that their employees know where the MSDS sheets are, should hire
qualified employees, and should provide regular trainings and evaluations.

C.      Cyndia’s Testimony

            Cyndia, the hairstylist who worked on Yolanda,
graduated from the National Career Institute in Harlingen, Texas, in 1994.  She
testified that she is licensed as a cosmetologist in the State of Texas and
began working for J.C. Penney in 1998.  

During her trial testimony, Cyndia
admitted that she did not know the meaning of the acronym MSDS when her
deposition was taken, but that she did, in fact, know what material safety data
sheets were.  She explained that MSDS sheets contained information on “safety,
the ingredients on hair products, what to do if the hair product is swallowed
or if it falls in your eye, what procedures.”  Cyndia also admitted that she
did not know the difference between sanitation and disinfection when asked
about it during her deposition.

 

With regard to Yolanda, Cyndia
testified that she did not know what chemicals or ingredients were in the hair
solution applied to Yolanda’s hair.  In fact, Cyndia did not recall anything
out of the ordinary when she treated Yolanda that day.  She did not remember Yolanda’s
scalp blistering, swelling, turning red, or Yolanda making any usual statements
about burning.  She did, however, testify that she wrote “Alert: very
sensitive” for Yolanda’s traveler sheet after she did Yolanda’s hair that day,
and that it was rare for her to put “alerts” on her customers’ files.  She did
not feel that the event with Yolanda warranted an incident report, though. 
During her direct examination, Cyndia also did not agree that a cosmetologist
should know what harmful ingredients comprise hair products.  

D.        Andres (Andy) Gonzalez’s Testimony 

            Andy, a licensed barber, has worked at the J.C.
Penney Salon for eighteen years.  Andy explained that most permanent hair
colors contain chemicals, such as ammonia or hydrogen peroxide, and that some
clients are allergic or sensitive to these chemicals.  In these situations,
Andy explained that semi-permanent hair colors like BioSilk are used because
they do not contain these chemicals and, thus, will not aggravate a client’s
scalp.  

            Andy had colored Yolanda’s hair before in 2004,
and recalled that she had a sensitive scalp:  “She told me that she had
problems with permanent color, that she was very sensitive, so that’s when I
started prescribing for her the semi-permanent color.”  Andy also said that he
knew what MSDS sheets were:  “that’s the information that gives you what to do
in case one of your clients comes in contact with a chemical . . . those are
always kept in the front desk where you have access to the information to see
what needs to be done if you have that problem.”  Andy testified that he
remembered when Yolanda came in May of 2005 and that her scalp was not red,
swollen, or blistered after the solution was applied.  He also did not remember
her saying that the solution was burning.  Finally, he denied that he asked
Yolanda to sign a waiver before she left the salon on the day in question.

E.        Melissa Garcia Villarreal’s Testimony

            Melissa was the receptionist at the J.C. Penney
Styling Salon.  She testified that, the day after Yolanda’s salon appointment,
she entered Cyndia’s notes onto Yolanda’s official “traveler” sheet on the J.C.
Penney computer system.  Melissa stated that Cyndia’s note, which stated
“Alert: Very sensitive, use 9A energy, 20 dry and 15 cool,” was the first time
in fourteen years she had ever seen the word “alert” used on a traveler sheet. 
She also testified that if she had seen or heard anything unusual on the day of
Yolanda’s appointment that she would have reported it.  

            A jury found for Yolanda and awarded her
$20,362.00 in actual damages and $20,000.00 for her physical pain and mental
anguish, for a total of $40,362.00.  This appeal ensued.

II. Discussion

A.        The Expert Testimony of Nancy
Heupel King

            By its first issue, J.C. Penney argues
that the trial court should have excluded the testimony of Yolanda’s expert,
Nancy Heupel King.  The trial court denied J.C. Penney’s Daubert/Robinson
motion to strike King and allowed her to testify.

            1.         Standard of Review and
Applicable Law 

The standard of review to determine
whether a trial court properly allowed King’s expert testimony is the abuse of
discretion standard.  Gammill v. Jack Williams Chevrolet, Inc., 972
S.W.2d 713, 718-19 (Tex. 1998); E.I. du Pont du Nemours & Co., Inc. v.
Robinson, 923 S.W.2d 549, 558 (Tex. 1995).  The test for abuse of
discretion is whether the trial court acted without reference to any guiding
rules or principles such that the ruling was arbitrary or unreasonable.  Downer
v. Aquamarine Operators, Inc., 701 S.W.2d 238, 241-42 (Tex. 1985).  A
reviewing court cannot conclude that a trial court abused its discretion simply
because the reviewing court would have ruled differently.  Loftin v. Martin,
776 S.W.2d 145, 146 (Tex. 1989).  

A person can be qualified as an
expert based on their knowledge, skill, training, experience, or education.  Gammill,
972 S.W.2d at 718; see Tex. R.
Evid. 702.  Experts can testify about scientific, technical, or other
specialized subjects if the testimony would assist the trier of fact to
understand the evidence or determining a fact issue.  Gammill, 972
S.W.2d at 718; see Tex. R. Evid.
702.

2.        Analysis

J.C. Penney filed a
“Daubert/Robinson Objection to the Testimony of Plaintiff’s Designated Expert
Nancy King Heupel and Motion to Strike or Limit Testimony.”  In its motion,
J.C. Penney first argued that King is a licensed manicurist and not a licensed
cosmetologist.  Thus, J.C. Penney argued that King did not have the knowledge,
skill, training, or experience to testify about hair styling services, and
specifically hair coloring.  Gammill, 972 S.W.2d at 718; Robinson,
923 S.W.2d at 556; see Tex. R.
Evid. 702.  They asserted that “just as a medical doctor without
experience and training in a specialized area of medicine cannot properly give
opinion critical of a doctor in that area, Ms. Heupel, with no training or
licensure in hair services[,] should not be permitted to give opinion on the
provision of such licensed services.”  See Broders v. Heise, 924 S.W.2d
148 (Tex. 1996) (finding an emergency room physician was not qualified to opine
about the standard of care provided by board-certified neurologists on a
patient with a craniocerebral brain injury).    

Counsel for Yolanda countered that
King was offered as an expert in salon management and safety standards, not as
an expert on hairstyling services.  At the hearing on the Daubert/Robinson
motion, Yolanda’s counsel stated that King would testify about “standards for a
hair salon,” which would include minimum requirements for training employees
and safety measures.  King’s credentials in cosmetology included her work as a
salon owner, her years as a consultant writing laws and license examinations
for various state boards of cosmetology (including Texas), and co-authoring and
editing a standard textbook on cosmetology.  

Our review of the record reveals
that King discussed that salon employers should ensure that their employees
know where the MSDS sheets are, hire qualified employees, and provide regular
trainings and evaluations.  King also opined that cosmetologists should work
within the scope of their licenses, receive regular training and evaluations,
know which chemicals and harmful ingredients are in the products they use on
customers, and know where material safety data sheets are located.  King’s
testimony did not appear to focus on the specifics of hairstyling or hair
coloring, as J.C. Penney contends.  Rather, it focused on the duties of an
employer and her opinion that J.C. Penney breached its duty as a salon because
Cyndia should have been trained to refer to the MSDS sheet when Yolanda
complained about burning sensations on her scalp.  

J.C. Penney also argued that King’s
“methodology” was flawed because she focused on issues that were not germane to
the case, such as the fact that Cyndia did not know the difference between
“sanitation” and “disinfection” when questioned about it during her
deposition.  This, J.C. Penney argued, created an “analytical gap” in King’s
testimony because King’s opinion “relied largely upon alleged deficiencies of .
. . [Cyndia’s] knowledge and application of salon sanitation, disenfection
[sic], and sterilization regulations . . . none of which have anything to do
with the type of hair color being used or whether that hair color gave
[Yolanda] an allergic reaction.”  We disagree with this characterization of
King’s testimony.  Rather than creating an “analytical gap” in her expert
opinion, as J.C. Penney argues, this testimony buttresses King’s opinion that
J.C. Penney hired an employee who may have lacked training in some basic cosmetology
skills and knowledge.   

 

In light of King’s actual
testimony, and the fact that J.C. Penney (not Cyndia) was the named defendant
in this case, we cannot say that the trial court abused its discretion when it
allowed King to testify.  See Downer, 701 S.W.2d at 241-42.  King’s
testimony focused on salon management and safety issues, not on hairstyling or
hair coloring.  We overrule this issue.

B.        Sufficiency of the Evidence

1.         Standard of
Review

We may sustain a legal sufficiency
challenge only when (1) the record discloses a complete absence of evidence of
a vital fact; (2) the court is barred by rules of law or of evidence from
giving weight to the only evidence offered to prove a vital fact; (3) the
evidence offered to prove a vital fact is no more than a mere scintilla; or (4)
the evidence conclusively establishes the opposite of a vital fact.  See
King Ranch, Inc. v. Chapman, 118 S.W.3d 742, 751 (Tex. 2003).  In
determining whether there is legally sufficient evidence to support the finding
under review, we must consider evidence favorable to the finding if a
reasonable fact finder could and disregard evidence contrary to the finding
unless a reasonable fact finder could not.  See City of Keller v. Wilson,
168 S.W.3d 802, 807, 827 (Tex. 2005).  

In reviewing an appellant’s factual
sufficiency challenge to an adverse jury finding on which the other party had
the burden of proof, we will consider all of the evidence in the record, both
in support of and contrary to the finding.  See Dow Chem. Co. v. Francis,
46 S.W.3d 237, 242 (Tex. 2001).  We will set aside the district court’s finding
only if it is so contrary to the overwhelming weight of the evidence as to be
clearly wrong and manifestly unjust.  Cain v. Bain, 709 S.W.2d 175, 176
(Tex. 1986).  Where there are disputed issues of fact, we give deference to the
fact-finder as they are the “sole judges of credibility of the witnesses and
the weight to be given to their testimony.”  Jaffe Aircraft Corp. v. Carr,
867 S.W.2d 27, 28 (Tex. 1993).

2.         Analysis

By its second issue, J.C. Penney
argues that Yolanda failed to prove negligence or an award of damages by
legally or factually sufficient evidence.  With regard to negligence, Yolanda’s
testimony clearly differs from the testimony of J.C. Penney employees Cyndia,
Andy, and Melissa.  Yolanda testified that Cyndia was running late to her
appointment and failed to review Yolanda’s “traveler sheet” before she began to
mix hair solution to lighten Yolanda’s hair.  The failure to review the
traveler sheet is significant because this document details previous services
and products used on the customer.  In this case, the traveler sheet would have
revealed that BioSilk, the semi-permanent solution, was the product typically
used on Yolanda’s hair because of her sensitive scalp.  Despite the traveler
sheet documentation and Cyndia’s history with Yolanda as a long-time salon
client, Cyndia failed to use the semi-permanent Biosilk solution.  Instead,
Cyndia used a permanent solution that contained ammonia and peroxide.  A jury
could have considered this oversight as evidence of negligence.  Further, after
Yolanda reported feeling a burning sensation on her scalp and her eyes began to
water, the jury heard testimony that Cyndia responded, “ah, don’t worry, girl,
it’ll go away.”  They also heard that when Cyndia was rinsing Yolanda’s hair,
she said, “[O]h, girl, I think I’m going to have to take you to the hospital,”
and “Don’t worry, girl, I’ll make it up to you.”  A jury could have determined
that a reasonable salon stylist would not have reacted in such a manner.

In contrast, we note that none of
the J.C. Penney employees recalled this version of the events.  Cyndia and
Melissa vaguely recalled Yolanda on this day, and Andy recalled the day but
stated that he did not remember Yolanda complaining about any burning and did
not see her scalp red or blistered.  However, it is within the province of the
jury to settle conflicts among the evidence and the credibility of the
witnesses, and the jury believed Yolanda’s version of the events.  See Jaffe
Aircraft Corp, 867 S.W.2d at 28.  We will not substitute our judgment for
that of the jury’s.  Because there is more than a scintilla of evidence to
support the jury’s finding on negligence, we hold that the evidence was
sufficient to support a negligence finding.  See King Ranch, Inc.,
118 S.W.3d at 751.

With respect to damages, Yolanda
pleaded and testified about suffering from blisters on her head, migraines, a
loss of appetite, and hair loss.  During trial, Yolanda’s counsel also
submitted medical records from Dr. Garza.  Dr. Garza’s records documented
“small vesicular lesions” due to “an allergic reaction of the scalp secondary
to hair coloring received on May 6, 2005” two weeks after her salon treatment;
noted that Yolanda’s nostrils were “fiery red”; and show that Rogaine was
prescribed for hair loss.  The record additionally revealed emergency room
records where an emergency-room physician diagnosed Yolanda with chronic
cephalgia and basogangleus lesions on her scalp; records from neurologist Dr.
Gutierrez who treated Yolanda’s migraines with Topamax; and records from Dr.
Fisher diagnosing Yolanda with generalized anxiety disorder.  Although the
record showed that Yolanda waited two weeks after her alleged exposure to the chemicals
in the hair solution before seeking medical treatment, this again was a fact
issue to be decided within the province of the jury.  See Jaffe
Aircraft Corp, 867 S.W.2d at 28.  In light of Yolanda’s testimony about her
immediate injuries following her salon appointment and the medical records
admitted into evidence, we hold that the jury’s award of damages was supported
by sufficient evidence.  The finding of damages is not so contrary to the
overwhelming weight of the evidence as to be clearly wrong and manifestly
unjust.  Cain, 709 S.W.2d at 176.  We overrule J.C. Penney’s second
issue.  

III.  Conclusion

Because we have overruled both of J.C. Penney’s issues, we
affirm the judgment of the trial court.

________________________

GINA
M. BENAVIDES,

Justice

 

 

Delivered and filed the

26th day of May, 2011.